## Elisha Babcock *vs.* Isaiah F. Terry & others.

Under an agreement of the owners with the master of a ship " to pay all legal expenses which may arise from his chastisement of the crew " during a certain voyage, he is entitled to recover the amount of legal expenses incurred by him in groundless suits and prosecutions against him for chastisement of the crew within proper limits and in lawful maintenance of the discipline of the ship, but not the amount of fines, costs, and other charges incurred by him growing out of a prosecution of him by one of the crew for an assault of which he was convicted, and an action for damages for the same assault which he settled after such conviction by payment of a sum of money.

The master, who was part owner, of a whale ship and its cargo, which consisted of more than forty thousand gallons of oil, shipped in January 1864 from Hobart Town in Van Dieman's Land, the last port on his return voyage to Fairhaven, between three and four thousand gallons of the oil, in an unarmed British vessel, to London, for the account of the owners, and drew against it for £600, alleging as his motives for the shipment, that he needed to raise money for necessary disbursements for the ship, and wished to secure the oil against capture by pirates. He made certain disbursements at Hobart Town on account of the ship, and also spent money there for his private purposes, and, when he sailed from there, was indebted to the owners more than seventeen hundred dollars on his disbursement account for the ship, but there remained in his possession only three hundred dollars from the proceeds of the draft; and on arriving at Fairhaven he told the ship's agent that he drew so large an amount at Hobart Town by reason of having his wife and family with him, and knew at the time that he was drawing two thousand dollars more than the ship owed him. His contract with the owners provided that in compensation for his services as master he should receive certain lays or gross shares in the proceeds of the voyage, and might have his oil set off to him during the voyage if he should wish.

*Held,* that in settlement of his accounts with the owners he was entitled to have charged to him at the price which it produced in gold so much of the oil shipped from Hobart Town as was necessary to raise money there for his disbursements on account of the ship, and to be credited with the amount of such disbursements by the same standard; and that the owners were entitled to charge to him the remainder of that oil as if he had received it on the final division at the end of the voyage.

BILL IN EQUITY filed by the master, who was also part owner, of the whale ship Lydia, against the other owners, alleging that he rendered service as master of the ship during a voyage from and to Fairhaven, from May 1860, to May 1864, under an agreement with Messrs. Jenney & Tripp, as the agents of the owners, that he should receive as compensation certain lays or gross shares in the proceeds of the voyage, and be indemnified for all expenses which he might incur growing out of the maintenance of discipline on board; that the respondent Terry, as agent of the owners, took possession of the ship and cargo at the end of the voyage, and disposed of them ; that, after deducting various sums which the complainant had received at various times, in money and its value in oil, from the agent and owners, there remained due to him a balance of upwards of seventeen thousand dollars ; and that he had been unable to obtain any adjustment of his accounts with the owners, who, through their agent Terry, refused to pay this balance. The prayer of the bill was for an account to be rendered by Terry of the proceeds of the voyage and the sale of the ship ; also for an account to be taken under the direction of the court of all the dealings and transactions between the parties in relation to the voyage ; and for a decree to compel payment to the complainant of such balance as thereupon might be found due to him.

The answer admitted the voyage and the sale of the ship and cargo at the end thereof, and that the complainant was appointed and served as master under an agreement with the agents of the owners, as set forth in the bill, except that it alleged that the agreement on the part of the agents concerning expenses relating to discipline was in these words, " We also agree to pay all legal expenses which may arise from his chastisement of the crew of said vessel," and that there was this further provision in the agreement, viz.: " It is understood that should Captain Babcock want to have his oil set off, we shall do so." And it alleged that the complainant, unless by virtue of this last provision, had no authority to take or sell the cargo except to meet necessary disbursements of the ship, but that at Hobart Town in Van Dieman's Land, the last port before the end of the voyage, he

took from the cargo, for his own objects, nineteen hundred and forty-five gallons of oil more than was necessary for the disbursements of the ship; which extra quantity the owners, in making up their accounts, charged to him as if he had received it on a final division of shares at the end of the voyage; and it further alleged that Messrs. Jenney & Tripp could not bind the owners to compensate the complainant for any losses which he incurred by reason of his own illegal conduct, and that some of his alleged expenses growing out of the maintenance of discipline were of that nature and so were not allowable; and further, that the respondents had always been ready to settle with the complainant upon these bases, but that he had refused to assent thereto; and the respondents annexed to the answer accounts as prayed for in the bill, by which it appeared that the cargo landed at Fairhaven at the end of the voyage included about forty thousand gallons of oil.

Issue being joined on the answer, the parties submitted the case for decision by the court upon the pleadings, and the depositions of the complainant and of the respondent Terry.

The complainant's deposition set forth the agreement between himself and Jenney & Tripp, containing the provisions quoted in the answer; and he testified with regard to the expenses arising from his chastisement of the crew during the voyage, that, on arriving home, one Williams, a boat-steerer, sued him for an alleged assault, which suit he defended successfully; that one Peterson, also a boat-steerer, made a claim for an alleged assault, which he settled without suit; and that in the United States district court he was indicted for an alleged assault on George Blank, the cook, who also brought an action against him for damages, that he was found guilty on the indictment and fined, and thereafter settled the action for damages by paying Blank a certain sum of money; that in these cases he incurred certain expenses for travel and counsel fees, as well as the amounts of the fine and damages in the Blank cases; and that in respect to the Williams' case and Blank's action for damages he acted under the advice of the respondent Terry. But Terry testified, on the contrary, that he had nothing to do, and did

nothing, with these various cases, gave no advice or assistance in the management of them, and exercised no direction or control over them.

With regard to the matter of the oil at Hobart Town, the complainant testified that the ship was there twice during the voyage, and each time he had occasion to make disbursements on the ship's account; that, the first time, which was in November 1861, he raised funds for the purpose by selling oil and bone there; and, the second time, he shipped thirty-six hundred and thirty-six gallons of oil from there to London, and drew £600 on it; that his intention was to draw about two thirds of the net proceeds of the quantity of oil shipped; that he thought this proceeding would be for the benefit of all concerned, and his idea was that it would be as well to ship even half his cargo, for he thought it probable that when the oil should reach home it would be shipped to London, and on account of the state of the markets and exchange it was better to ship from Hobart Town; that other American masters were doing the same thing, some of them shipping all they had on board, and he thought seriously of shipping five hundred barrels; that the pirates were around at the time, which was another consideration for him in making the shipment; that he made it in the Percy, a British vessel, but unarmed, which was the only vessel in port when he arrived that could take it, and was at the time taking in wool, and therefore he had to ship it at once or not at all; that, after making his disbursements, which were for provisions, general recruits, discharging men, paying them off and giving liberty money, he had remaining out of the £600 about three hundred dollars in gold, which he kept when he arrived home, as the ship was indebted to him; that while at Hobart Town he expended money for private purposes, such as clothing for his family, and did not keep his private money and the ship's money separate, but "had goods of his own on board the ship which realized to him more than he spent for his private purposes;" that his disbursement account as rendered to the respondent Terry, was true; and that, while he was at Hobart Town this second time, he "turned out oil to the officers for them to dispose of themselves, to be de-

ducted from their proportion of the cargo, getting so much less oil when they got home," and " told them there would be so much oil to be deducted and it would not make any difference about the price either way."

The respondent Terry testified that after the ship arrived home he had conversation concerning the shipment of oil from Hobart Town, with the complainant, who told him that the amount of it was thirty-six hundred and thirty-six gallons, against which he had drawn for £600, and, on the respondent's asking why he drew so large an amount, his answer was that he did so " on account of having his wife and family with him, that he knew at the time that he was drawing for two thousand dollars more than the ship was indebted to him;" and he further testified that the complainant had rendered his disbursement account, (which the witness produced,) by which it appeared that the total of his disbursements for the ship at Hobart Town was eight hundred and ten dollars and twenty-nine cents, that at that port within a few days prior to his draft against the oil shipped he had realized four hundred and eighty-eight dollars and seven cents from sales of merchandise from the ship, and that when he sailed from Hobart Town there was due from him to the owners, on the disbursement account, a balance of seventeen hundred and seventy-seven dollars and sixty-six cents. And the witness further testified that he had been an importer and seller of oil for twenty years; that in January 1864 the best market for oil was not London, but New Bedford; and, in reply to the question, " If a captain should for any reason ship oil to London from abroad, what is the usual way it is done?" he answered that, so far as he knew, " it is shipped for owners' account; the consignee is instructed to correspond with the owners in regard to it, and in such cases they get advices from the consignee on the receipt of the oil or bills of lading, and then all business is done between the owners and the consignee; when the net proceeds are ascertained the owner draws for the amount." By the London account rendered to the owners, which the witness produced, of the complainant's shipment from Hobart Town, it appeared that the net proceeds of it

after satisfying the complainant's draft for £600, were less than £4.

The questions whether or not the complainant shipped more oil from Hobart Town than was justifiable, and in what manner he should account for that shipment or its proceeds, and to what extent, if any, the respondents were bound to reimburse to him the expenses of his litigation, were reserved by *Gray*, J., for determination by the full court, the parties agreeing that thereafter the case should be sent to an assessor.

*J. C. Stone*, for the complainant.

*T. M. Stetson*, for the respondents.

Hoar, J. 1. A contract by the owners of a vessel to indemnify the master for assaults and batteries committed on the crew under the name of "chastisement" would be an illegal contract, not to be enforced by a court of justice. But a contract to compensate him for legal expenses which he might incur in groundless suits and prosecutions against him, for "chastisement of the crew" within proper limits, and in the lawful maintenance of the discipline of the ship, is a lawful and just contract, and may be enforced. As no presumption can exist that the defendants intended to make a contract contrary to law and public policy, the agreement with the plaintiff must be construed as extending only to matters of the latter description. The items for defending the Williams case, and settling the Peterson case, in neither of which he was found guilty of any crime, seem to us upon the evidence to have been reasonably and fairly incurred under the defendants' promise to indemnify him, and should be allowed to him in account. The fine, costs, and charges, criminal and civil, which grew out of the assault upon the cook, George Blank, of which he was convicted, were the consequences of the plaintiff's own misconduct, and he has no claim to compensation for them.

2. We are unable to find in the evidence any sufficient reason for the sale of the oil by the plaintiff, or its shipment to a foreign market for the purpose of sale, and drawing against the shipment, except to the extent required for the ship's disbursements. The master of a ship has no such general authority by virtue of

his employment; nor has a part owner where he is not intrusted with the direction of the voyage. Nor is there anything in the nature of a whaling voyage to create in the master such an un-limited authority. His duty is to get his oil and to bring or ship it home. His right to sell the oil, or to ship it to another mar-ket, in the absence of instructions from the owners, express or implied, can only be derived from a controlling necessity. *Un-derwood* v. *Robertson*, 4 Camp. 138. *The Packet*, 3 Mason, 255. *Peters* v. *Ballistier*, 3 Pick. 495. The authorities on this point are abundant and uniform. But there are two decisive objec-tions to the sale or shipment by the plaintiff in this case, which was without any authority from the owners: 1. That there was no imperative necessity for his act; and 2. That we are not satisfied that he acted with reference to a supposed neces-sity for the purpose of saving the oil, but that he proceeded as he did chiefly with a view to raise money.

There might be a case where the danger of capture was so imminent and great, that the master would be justified, as the agent of the owners from necessity, in selling his cargo or the proceeds of his voyage, or shipping them in some other manner than in his own vessel to the home port, as the only practicable means of saving them. But whatever danger existed affected as much the rest of the oil, as the part which he shipped to Eng-land. And the evidence has brought us to the conclusion that the quantity which he thus shipped was determined by the sum which he wished to draw for, to appropriate to his own uses.

His only justification, therefore, for the shipment of more than was needed to furnish money for the necessary disbursements of the ship, is to be found in his right to have his portion of the oil set off to him under the contract; and he has no reason to complain that it has been charged to him in account as if he had received it on a final division at the settlement of the voy-age.

The amount of oil necessary to raise money for his disburse-ments, which the defendants do not deny that he might right-fully dispose of, as it was for payments to be made in a foreign port, where the currency was measured by a gold standard, he is

entitled to have charged to him at the price which it produced in gold ; and to be credited with the disbursements by the same standard. *Bush* v. *Baldrey*, 11 Allen, 367. *Hussey* v. *Farlow*, 9 Allen, 263.

A decree is to be entered for the plaintiff for the balance due him upon the account computed upon these principles, with costs.