1. An agreement by an employer with the wife of an employee, in the presence of the employee, whereby the employer agreed to pay to the wife of the employee, an amount of money equivalent to the employee's salary, and to furnish counsel to the employee when needed, and to furnish a home for the employee's family, such money to be paid and such home furnished so long as the wife was deprived of the support usually afforded by her husband by reason of the performance of his duties as watchman or marshal of a mill village, is void as being contrary to public policy, if it was intended to cover unlawful acts of such husband-employee.
2. The petition does not allege a contract between the wife of the employee and the defendant whereby the defendant agreed to furnish the consideration stated above if the wife would induce her husband to abandon his motion for a new trial in the case in which he was found guilty of voluntary manslaughter.
 DECIDED OCTOBER 27, 1944.
Katie Lou Wortham brought suit to the September term 1942 of the superior court of Douglas County against Beaver-Lois Mills. In her petition she alleged, in substance, as follows: That her husband, Warner Wortham, was employed as marshal or watchman by the defendant; that labor problems began to come about between the defendant and its employees, and much disorder and confusion resulted between them, making the position of marshal *Page 686 
of the mill village dangerous; that knowing the danger of her husband's position as the defendant's marshal under existing conditions caused by the labor trouble between the defendant and its employees, she persuaded her husband to give up the position of marshal for the defendant; that on or about June 15, 1938, she and her husband went to T. W. Haddle, the defendant's superintendent, at which time her husband asked to resign said position as marshal of the defendant's mill village, and tendered the uniform which had been furnished him to the superintendent; that in great excitement the defendant's superintendent said he could not accept the resignation of Warner Wortham in view of the fact that the labor conditions were growing worse all the time and he expected trouble any hour. Regardless of Mr. Haddle's pleas for her husband to remain marshal of the mill village, he had promised her he would resign at that moment; that as an inducement to her to withdraw her objections to her husband's working as marshal of the village, T. W. Haddle, the defendant's superintendent, contracted and agreed with her that if she would withdraw her objections (because her objections were causing the said Warner Wortham to resign and quit as marshal of the mill village), if she were ever deprived of the support of herself and her minor children by her husband for any cause due to her husband's employment as marshal of the defendant's mill village while working as marshal therein, then in such event, the defendant would furnish him necessary counsel (and an attorney if he needed one), and would pay her an amount per month equalling the salary her husband was then making, to wit, $125 per month, and would pay her said amount so long as she and their minor children were deprived of her husband's support; and in addition, thereto, would furnish her a home and a place to live in one of the houses in said village belonging to the defendant. That said agreement and contract was made by T. W. Haddle, superintendent of the defendant, who at the time was acting for said defendant, and had the authority to make said contract, and that the same was ratified by the defendant as herein alleged and set out; that for and in consideration of said promise from said defendant's superintendent, T. W. Haddle, she, being thus assured of security promised by the defendant, withdrew her objections to her husband's working as the defendant's marshal, and as a result of her withdrawal of her objections, the said Warner Wortham *Page 687 
remained in the employment of the defendant as marshal of the mill village, and on August 13, 1938, while on duty as marshal of the defendant's mill village, and while in line of duty as an employee of the defendant, he was directed by his employer who was immediately over him and the one from whom he took orders under the instructions of the superintendent, to wit, B. J. Hutto, to go to a certain place in the mill village where gambling and disorder were causing considerable disturbance, and restore order and arrest the participants in said gambling game; that by order of her husband's employer, and while in the line of duty as a servant of the defendant, her said husband, Warner Wortham, went to the designated place for the purpose of restoring order as directed by his employer, and on reaching said place, her said husband met with resistance, placing his life in immediate danger; and while defending himself, and while acting in self-defense and under the fears of a reasonable man that his life was in danger, he did shoot and kill one of the participants of said gambling game, and was on said date locked up and confined in jail and prison for a period of twenty-eight months; that the defendant, complying in part with its contract and agreement had with her, as above set out, furnished counsel to represent her said husband in court under a charge of "murder," and furnished her a house in which to live for approximately three years. Further complying with said agreement and contract, the defendant paid her $125 per month for a period of three months after her husband was confined in jail and prison; that her husband was convicted of voluntary manslaughter, and was sentenced to serve from twelve to twenty years in the penitentiary, though he was innocent and justified in what he did. That after his conviction, and after his counsel had filed a motion for a new trial, said superintendent named above, further contracted and agreed that if her husband would withdraw his motion for a new trial and go ahead and serve a portion of his time that the defendant would pay her an amount equivalent to his salary during the time he had to serve, and would furnish a house for her to live in; that acting on this contract and agreement, she induced her husband to withdraw his motion for a new trial and begin serving the sentence; and that he served a term of twenty-eight months as aforesaid. The defendant paid her the equivalent of his salary under said contract and agreement for a period of three *Page 688 
months, and furnished her a house for three years as aforesaid; that as a result of the employment of her husband as marshal of said mill village, and as a result of the continuation of his employment with the said defendant, and as a result of his serving a term in the penitentiary when he was justified and should have been granted a new trial, she lost the support of herself and minor children by her said husband for a period of twenty-eight months as aforesaid; that under the said contract and agreement, the defendant was liable to her in the amount of $125 per month, the equivalent of the salary being made by her husband at said time; that notwithstanding all of the promises made by the defendant to her as set out above, which promises he repeated and ratified many times before and after she was deprived of the service of her husband for herself and children, the defendant did no more than furnish a house during the three years she was thus deprived of the support of her husband; that she and her husband complied with the contract and agreement with the defendant, and the said defendant has failed and refused to comply, as herein set out. That she has made demands upon the defendant which have been refused, and that for a period of twenty-eight months as aforesaid, she and her minor children were deprived of the support of her husband, and she was forced to support herself and her minor children the best she could, and it was necessary for her to sell and dispose of what little property she had in and near Douglasville, Georgia, so as to support herself and her minor children; that had it not been for the contract and agreement had by the defendant, her said husband would have resigned and quit said employment, and she would have had the support of her said husband for herself and their minor children for the period herein sued for; that the contract herein alleged and set out and made by the defendant's superintendent with her was ratified by the defendant; that her husband was earning as marshal and as an employee of the defendant, the sum of $125 per month at said time, and she is entitled to recover for a period of twenty-five months the equivalent of his salary, to wit, $125 per month, the defendant company having complied with said agreement for a period of three months and during that time paid her $125 per month; that her husband at the time he was compelled to shoot and kill one of the participants in the gambling game or disorder, was performing his duty as an *Page 689 
employee of the defendant company and acting in line of his employment with said defendant, and acting under the instructions of his superior.
The defendant filed general and special demurrers to the petition, which were sustained and the action dismissed. The plaintiff excepted to this ruling.
1. The court did not err in sustaining the general demurrer in so far as the original agreement set forth in the petition is involved. The agreement, paraphrased, was that if the plaintiff was deprived of the support ordinarily furnished by her husband by reason of his discharge of the duties of his employment, the defendant would pay her $125 per month, in addition to furnishing her family a house to live in and the husband legal counsel, presumably to represent him in cases in which he was charged with a crime. If the contract did not contemplate criminal acts, obviously the plaintiff would not be entitled to recover under the original agreement because, so far as the original agreement is concerned, the act in question has been adjudicated to have been a criminal act on the part of the husband. If the original agreement did contemplate criminal acts, even though not in the sense that any particular crime was contemplated at the time — if it was to cover a criminal act if and when it occurred — the contract was void as being against public policy, in that it tended to dispense with care, caution, and judgment on the part of the officer and to incline him to rely to some extent on the assurance that his employer stood obligated to furnish him counsel without cost to him, and that his family would be provided for in the event of his conviction. While it may be possible that the homicide in this case was entirely isolated from the agreement, and would have occurred without it, contracts of this kind must be discouraged in the interest of society. There must be no premium on criminal acts. "Whatever has an obvious tendency to encourage crime is contrary to public policy. Public policy forbids the insertion in an agreement of a condition which would tend to induce crime." 12 Am. Jur. 672, § 174. This agreement is in the same category with those seeking to indemnify an officer against liability arising from *Page 690 
unlawful acts. See 17 C. J. S. 592, § 221; 13 C. J. S. 443, n. 84. See also Babcock v. Terry, 97 Mass., 482 (1867).
2. The second theory upon which recovery is sought is, that there was an agreement by the defendant with the plaintiff whereby the defendant would pay her the consideration stated if she would induce her husband to abandon his motion for a new trial. Assuming for the sake of argument that it would not be against public policy for a wife to induce her husband to surrender his liberty for the consideration stated, especially when she then and now contends that he is innocent, there is no contract alleged between the plaintiff and the defendant. It is not alleged that the defendant promised her anything if she would induce her husband to abandon his motion for a new trial. Neither is there an allegation that there was a contract with the husband alone, or with her as coparty. Even if there is a contract alleged between the husband and the defendant of which the plaintiff was the beneficiary, she can not maintain an action in her own name thereon. Code, § 3-108; Waxelbaum v. Waxelbaum,54 Ga. App. 823 (189 S.E. 283), and cit.
The court did not err in sustaining the general demurrer and dismissing the action.
Judgment affirmed. Sutton, P. J., and Parker, J., concur.